## COUNTY OF PENOBSCOT.

† BRYANT *versus* CROSBY, *Executor.*

Representations by the vendor of personal property, as to its condition, made a month before the sale is consummated, are too remote to be admitted in evidence.

When evidence has been introduced of *representations* respecting personal property by the vendor, some of which are mere *opinions*, and others regard essential *facts* which amount to a warranty; and the Court are requested to instruct the jury that *such representations* imply a warranty to their extent, the request may properly be refused. A Judge is not required to separate the matters contained in *one request*, and make a portion of it, which is pertinent, his instructions to the jury, and withhold the rest.

A warranty to be effectual must be *intended* as such by the parties; but to constitute a warranty, it is sufficient, if the *words* used *implied* an under-

taking on the part of the owner, that the things sold were what they were represented to be.

If a contract in writing for the bailment of property, signed by the bailee, contains a recital that the same, for a valuable consideration, was previously sold, transferred and delivered by him to the bailor, it is evidence that such previous contract was *executed,* and the *title* to the property passed to the bailor, although portions of it were crops not harvested.

ON EXCEPTIONS from *Nisi Prius,* APPLETON, J., presiding.

ASSUMPSIT, on the following contract, signed by defendant's testator, as surety, dated Nov. 30, 1847.

"Received of Nathaniel Bryant four hundred and seventy-five sheep and twenty-five rams, now in good order and condition, for which we jointly and severally promise to deliver to him at E. T. Morrill's house in Atkinson, thirty-five hundred pounds of wool, one half of it to be delivered in June, 1848, and the other half in June, 1849. The wool to be equal in quality to that grown on said sheep, well washed on the sheep, and done up in good order and condition; and the stock and the wool sheared from them, and all increase, shall be and remain at all times, the property of said Bryant, until payments are made as above, and the same shall be well kept at our risk, and on failure to make any payment as aforesaid, or if they pass out of our hands, said Bryant may take them at any time and we will pay all expense and damage."

Several indorsements were on the back. There was also this memorandum thereon, under date of August 26, 1850, and signed by E. T. Morrill, the principal.

"The amount due on this obligation this day, is six hundred and sixty-three dollars and twenty cents."

The plaintiff, under notice, at a former trial of this cause, produced a bill of sale which was left on the files of the Court, and was read by defendant, viz. : —

"Atkinson, Aug. 26, 1850.

"In consideration of six hundred and sixty-three dollars and twenty-one hundredths, paid by Nathaniel Bryant of Dexter, I this day sold, transferred and delivered to said

Bryant of Dexter, the following personal property on my farm in Atkinson, viz. : —

| | | |
|---|---|---|
| 20 tons of hay, the same in my barn, | $100 | 00 |
| 1 Stud horse, | 100 | 00 |
| 600 bushels of oats, being all standing and growing on said farm as estimated, and those already harvested, and I am to harvest those not harvested, and put the same into the granary, in my barn, in good condition, to be at said Bryant's disposal at any time he calls for the same, at 25 cents per bushel, | 150 | 00 |
| 2 Oxen, almost ten years old, of light red color, | 40 | 00 |
| 2 Cows, one nine, the other twelve years old, both red, at | 25 | 00 |
| 1 Bull, three years old, at | 20 | 00 |
| 11 Rams, marked with red paint, | 13 | 20 |
| 1 Gray mare, three years old, and one sucking colt, | 85 | 00 |
| 50 bushels of wheat as estimated, which I am to harvest and deliver when called for in good condition, | 50 | 00 |
| 1 Old mare, dark red color, 20 years old, at | 25 | 00 |
| 1 Yearling colt, red color, | 25 | 00 |
| 50 bushels of corn, which I agree to harvest in good condition, and deliver the same as soon as the same can be threshed out in merchantable order, | 30 | 00 |
| | | |
| | $663 | 20 |

" Said property having all been left in my charge, I hereby agree to keep the same safely, in good condition, all at my risk, and in case of loss or any deficiency in the oats, or wheat or corn, or loss in any shape, I agree to pay the same to the said Bryant, he having the right to take any part or the whole of the same, any time he may wish so to do.

. " E. T. Morrill."

" Witness to signature and delivery,

" Otis Cutler."

On the back of this paper were sundry indorsements of many of the articles as having been received, with the prices, amounting to $554,00.

The hay, oats, and part of the wheat, were not received by plaintiff; but more corn than was designated in the above paper.

The defendant called one Nason as a witness, who testified, that in a conversation with Bryant a few days after he got this bill of sale, he told him he had got his pay of Morrill, and took out this bill of sale and read over some of the articles ; that he told him, he might lose this yet, Bryant replied, " Morrill has no right to sell any of the property without paying me the proceeds."

The defendant offered to prove false representations made by Bryant in relation to the sheep, as affecting the contract for the sheep, on the ground of fraud and warranty, during the negotiation for them, and a month before the date of the contract; but the Judge refused to receive the evidence.

The defendant introduced evidence, that at the time Morrill went after the sheep and the contract was completed, Bryant showed samples of the wool from his sheep, and said, that the ewe sheep would clip from three to five pounds per head on an average; the bucks from five to nine pounds. He was told they looked small to shear so much. Bryant said they would shear more than they looked, the wool was solid all over them. He was asked if they would winter well. He said that they would — they required more care, but would winter as well as common sheep. He was asked if there were not some old sheep among them. He said no ; that he did not keep any old sheep, except the bucks ; that he usually got rid of his old sheep, before winter ; and that the sheep were healthy.

It was in evidence that between two and three hundred of the sheep died the first winter and spring after the contract, of a disease in the head; and that the fleeces of the ewe sheep that lived did not average over two and half pounds each when sheared.

Some of the testimony tended to prove that a large number of the sheep were old, poor and diseased, at the time of sale; and some tended to show fault on the part of Morrill

in keeping the sheep, and that they died from want of proper food, water, and by exposure.

Some evidence was introduced by defendant tending to show, that the plaintiff's flock was unhealthy, and that a large number of his sheep had died the same year of the contract, and died of the same disease, and that Bryant knew, or had good reason to believe, that the sheep sold to Morrill had the same at the time of sale.

Other evidence was in the case tending to show the selection was made by Morrill and his satisfaction with the sheep, and that when sold they were in good condition and the flock healthy, and that Morrill examined the flock in Oct. previous to the sale.

The defendant requested the Court to instruct the jury:

1st. If Bryant represented to Morrill, that those ewe sheep would shear from three to five pounds of wool per head, and that Morrill could pay for the sheep by the wool from the sheep, in two years and have wool left, and also, that the sheep were young, healthy and would winter well, and made these representations in good faith, and they were untrue, and made as an inducement to the sale, these representations would imply a warranty to the extent of them.

2d. Also, that if these representations were made by Bryant, knowing them to be untrue, they would still imply a warranty to the extent of them, and would also constitute a fraud.

3d. Also, that if he knew there was a disease in his flock, or had good reason to believe there was such disease, and did not disclose this to Oliver Crosby, the surety, he is discharged.

4th. That in order to constitute a warranty, it was not absolutely necessary that Bryant himself should intend, at the time of the representations, to bind himself by a warranty.

5th. That the bill of sale of August 26, 1850, if they believed the testimony of Nason in relation to what Bryant

said to him about having got his pay, and his testimony relating to said bill of sale, was evidence of payment in full of the contract of Nov. 30, 1847.

6th. That the taking of the bill of sale, August 26, 1850, if it had reference to the indebtedness on the contract of Nov. 30, 1847, and they believed the evidence of Nason, before referred to, was evidence of an implied agreement on the part of Bryant to forbear payment on said contract, and was a discharge of the surety. These requests were refused, except as embraced in the instructions following:—

The Court instructed the jury, *that* the plaintiff's right to recover depended upon the contract of Nov. 30, 1847; *that* the defendant seeks to avoid the contract upon the ground of fraud, and if not fraudulent to reduce the damages in consequence of a breach of warranty made by plaintiff; *that* the assertion in the contract of Nov. 30, that the sheep were in good order and condition, might be regarded as a representation by plaintiff; *that* if a representation falsely made by plaintiff, knowing its falsehood and with intent to deceive, and the principal, Morrill, in the exercise of common care and prudence was thereby deceived, that it would avoid the contract; *that* if the contract was entered into by Morrill in consequence of representations by plaintiff as to the age and condition of the sheep, or the amount of wool they would shear, and those representations were false, and known to be so by plaintiff, uttered by him with intent to deceive, and Morrill in the exercise of ordinary care and prudence was thereby deceived, that it would be void; *that* if there was no fraud, then they would inquire whether there was warranty or not; *that* the warranty, if any, was verbal; *that* a warranty was a contract to which, as to all other contracts, the assent of the contracting parties was necessary; *that* it must be so understood and agreed and intended by the parties; *that* to constitute a warranty the word warranty need not be used, it is enough if the words actually used, implied an undertaking on the part of the owner, that the things sold are what they are

represented to be; *that* if there was a warranty, the defendant was entitled to a reduction in damages, to the full extent of all damages sustained in consequence of a breach of said warranty; *that*, by the contract or bill of sale of Aug. 26, 1850, from Morrill to plaintiff, the plaintiff would be liable only for what he received, and had the beneficial use of, and not for what remaining in the hands of Morrill, went to his use and benefit, and were disposed of without plaintiff's consent; *that* as to the oats, wheat and corn, not then harvested, the title to them did not pass by that instrument to plaintiff, and he would be liable only for such portions of the same as actually went into his hands; *that* as to the hay, Bryant was liable to account for only so much, if any, as he had the benefit of; *that* the contract of Aug. 26 did not discharge the surety, but that plaintiff might at any time have sustained a suit against Morrill, notwithstanding the same.

The Court instructed the jury, that they had a right to take into consideration, the fact that Morrill, on Aug. 26, 1850, gave a bill of sale of property to pay the amount of the indebtedness, on the contract of Nov. 30, 1847, as rebutting the presumption of fraud.

A verdict was returned for plaintiff, and the defendant excepted to the rulings, instructions, and refusals to instruct, of the Court.

*J. Crosby & G. W. Ingersoll*, supported the exceptions.

1st. The false representations made by the defendant ought not to have been excluded. They were made during the negotiation for the trade. This bore directly upon the question at issue, the question of fraud. Chitty on Cont. 397 and note; Parsons on Cont. 463. This evidence tended to prove the issue. 1 Greenl. Ev. § 51.

2d. The requested instruction as to a warranty should have been given. *Henshaw* v. *Robbins*, 9 Met. 83. What is a warranty. Chitty on Cont. 389 and 394; 4 C. & P. 45; Parsons on Cont. 462–3.

3d. The third requested instruction is authorized by the case of *Franklin Bank* v. *Cooper*, 36 Maine, 179.

4th. The contract declared on has been paid. The evidence of Nason sustains this position, and there was nothing in the case to disprove it. The parties agreed that the bill of sale was payment of the contract; but the Judge instructs the jury that it was not a payment in opposition to the presumption arising from the paper itself and of all the testimony in the case. The Judge withdraws the question of payment (Aug. 26, 1850,) entirely from the jury.

Why did not the title to the oats, wheat and corn then standing, pass by the bill of sale? Notwithstanding something additional remains to be done, yet the property passes, if such be the intention of the parties, especially when there has been a delivery or the consideration has been paid. It cannot be said the property did not pass for such a cause. *Macomber* v. *Parker*, 13 Pick. 175; *Riddle* v. *Varnum*, 20 Pick. 280; *Damon* v. *Osborn*, 1 Pick. 476.

Here this property was paid for and delivered.

Nor does the fact that the risk was upon Morrill change it. *Barker* v. *Roberts*, 8 Greenl. 101.

The contract is not within the statute of frauds. Chitty on Con. 267, 270, 271; *Whitmarsh* v. *Walker*, 1 Met. 313. *Claflin* v. *Carpenter*, 4 Met. 580; *Cutler* v. *Pope*, 13 Maine, 377.

The hay it was then in the barn and delivered. Bryant could take all this property on demand, and could follow it into the possession of a third person. What more was wanting to complete his ownership?

The sixth requested instruction should have been given; and all the instructions of the Court on the question of payment were erroneous.

5th. In the contract of Aug. 26, 1850, there was an implied agreement to forbear payment by which the surety is discharged. *Bates* v. *Churchill*, 32 Maine, 31.

*Blake, contra,* argued, that the instructions as to the warranty were correct, but, if erroneous, it was no cause for

setting aside the verdict.   No evidence of a *warranty* by parol was admitted, upon which it was necessary for the Court to rule.   The contract of sale was in writing and containing no words of warranty, parol evidence is not admissible to add a warranty.  8 Bing. 48; 1 Parsons on Cont. 470;  Long on Sales, 210; 4 Taunt. 779.

The elements of a warranty were correctly stated by the Judge and applied to the facts of the case.

As to the wheat, oats and corn, not then harvested, they did not pass by the bill of sale.   These growing crops might all be destroyed before maturity; if not, Morrill might not harvest them; something remained to be done by Morrill. 3 Mason, 112; 3 N. H. 382.

It was in these respects an executory contract, and title would not pass.   15 Johns. 349.   But whether it passed or not is immaterial, as it was all at the risk of Morrill, and plaintiff was only to account for what he received.

RICE, J. — The first exception taken was to the exclusion of certain statements, in reference to the sheep, made by the plaintiff in presence of William F. Morrill.   These alleged representations were made a month before the contract of Nov. 30, was consummated.   Testimony so remote and uncertain in its character was properly excluded.

Upon the point of warranty no error is perceived in the instructions given by the presiding Judge.   It is contended, that the specific instructions which were requested upon this branch of the case, and which were withheld by the Court, should have been given; especially those contained in the following request: —

" If Bryant represented to Morrill that those ewe sheep would shear from three to five pounds of wool per head, and that Morrill could pay for the sheep, by the wool from the sheep in two years, and have wool left, and also, that the sheep were young, healthy and would winter well, and made these representations in good faith, and they were

untrue, and made as an inducement to the sale, these representations would imply a warranty to the extent of them."

It is not always easy to determine whether certain language does or does not imply a warranty; much will depend upon the situation of the parties, and the condition of things when the language is used, and to which it will apply.

It is certain that the word warrant need not be used, nor any other of precisely the same meaning. It is enough if the words actually used impart an understanding on the part of the owner that the chattel is what it is represented to be; or an equivalent to such undertaking. 1 Parsons on Contracts, 463.

A warranty will not be implied from loose conversations between the vendor and vendee, in which the vendor may praise his goods, or express an opinion as to their qualities, or the advantages that may result to the vendee from the purchase. No expression of opinion, however strong, would import a warranty. But if the vendor, at the time of the sale, affirms a fact, as to the essential qualities of his goods in clear and definite language and the purchaser buys on the faith of such affirmation, that, we think, is an express warranty. *Henshaw & al.* v. *Robbins*, 9 Met. 83.

The declarations of Bryant as to the amount of wool the sheep would shear per head, the time in which Morrill could pay for the sheep, and whether he would have wool left after paying for them in a given time, are obviously matters of opinion, and must have been so understood by the parties. They were mere speculations as to the future, of the correctness of which one could judge as well as the other. They were not affirmations of existing facts in relation of the quality of the sheep. But the statement that the sheep were young and healthy was a representation of a different character, and such as, if made as an inducement to the sale, would strongly tend to prove an express warranty.

These various representations of the plaintiff were all grouped together in one request, and the Court was desired

to give a particular construction to the whole, as matter of law. To have complied with such a request would have been erroneous. When parties incorporate into a request matter which is impertinent or improper, with other matter which is pertinent and proper, the Court will rightfully reject the whole. A Judge cannot be called upon to dissect a long request, presented perhaps, for the first time, while he is submitting a case to the jury, and select the sound from the unsound; giving the former to the jury and rejecting the latter. For this reason this request was properly withheld.

Pertinent and correct instructions were given upon the matters contained in the second and third requests.

The fourth request was properly declined. If a party uses language which imports a warranty, the presumption is, that he *intends* it as such. To have given the instruction as requested, would have tended to mislead the jury.

The fifth request was as follows: — The defendant contended and so requested the Court to instruct the jury, that the bill of sale of Aug. 26, 1850, if they believed the testimony of Nason, in relation to what Bryant said to him about having got his pay, and his testimony relating to said bill of sale, was evidence of payment in full of the contract of Nov. 30, 1847. This was refused, and upon this point the Judge instructed the jury, that by the contract or bill of sale of August 26, 1850, from Morrill to plaintiff, the plaintiff would be liable only for what he received, and had the beneficial use of, and not for what remaining in the hands of Morrill went to his use and benefit, and were disposed of without plaintiff's consent. As to the oats, wheat, and corn not then harvested, the title to them did not pass by that instrument to the plaintiff, and he would be liable only for such portions of the same as actually went into his hands, and that as to the hay, Bryant was liable to account for only so much, if any, as he had the benefit of.

The refusal to give this instruction, when taken in connection with those actually given upon the same point, is worthy of consideration.

It will be observed that the paper in the case, dated August 26, 1850, does not purport to be a contract of sale from Morrill to Bryant. It is simply a receipt or contract of bailment given by Morrill to the plaintiff, in which he recites the terms of a contract made that day between the same parties. It is as follows:—

"Atkinson, Aug. 26, 1850.

"In consideration of six hundred and sixty-three dollars and twenty-one hundredths, paid by Nathaniel Bryant of Dexter, I this day *sold, transferred* and *delivered* to said Bryant of Dexter, the following personal property on my farm in Atkinson, viz.:—" Then follows a list of the property.

"The paper concludes as follows:—"Said property having been left in my charge, I agree to keep the same safely, in good condition, all at my risk, and in case of loss or any deficiency in the oats, or wheat, or corn, or loss in any shape, I agree to pay the same to said Bryant, he having the right to take any part, or the whole of the same, at any time he may wish to do so."

When this case was before the Court on a former occasion, 36 Maine, 563, some incidental remarks were made by the Judge, who drew the opinion, upon the character of the contract of Aug. 26, 1850. The case at that time, did not turn upon any question arising out of that contract. The remarks then made upon that point may not, therefore, have received the consideration which would have been given them if the disposition of the case had depended upon the construction of this contract.

The Court, however, were then of opinion, that the contract of Aug. 26, 1850, was an absolute bill of sale, and could not be construed as a mortgage; that it did not appear by its terms to be in any way connected with the contract of Nov. 30, 1847, but that parol evidence would be admissible to show, that the property sold, or the agreed price of it, was to be applied in payment of the first contract.

Some confusion may have arisen in not keeping in view the distinction between the contract by which Morrill *sold, transferred* and *delivered* to Bryant certain property, and the receipt given by Morrill for that property in which he recites the terms of the former contract, and agrees to keep the property subject to the order of Bryant.

An important practical question is, what was the consideration paid for the transfer of the property on the 26th of Aug. 1850? The defendants say it was the payment of the balance due on the first contract. The fact, that the consideration was the precise amount found due by the parties on the old contract, on that day, is significant and would, perhaps, under the circumstances when taken in connection with the testimony of Nason, authorize such an inference. If such was the fact, the result would be that the original contract was paid thereby, unless there was some reason to prevent the sale of Aug. 26, 1850, from being fully executed.

Did that property pass? The receipt shows a valuable consideration, and recites that it was sold, transferred and delivered. This receipt was signed by Morrill, and comes from the possession of Bryant. There is no evidence in the case tending to show that it was given by mistake, or that any of the recitations therein are untrue.

But it is contended that the oats, wheat, and corn, not then harvested, did not pass by that contract. So far as the corn is concerned, there is now no controversy, as more was afterwards delivered, as appears by entries on the back of the receipt, than was included in the contract.

Under what circumstances growing or standing crops can be passed between vendor and vendee, has frequently been considered by courts of law.

In *Crosby* v. *Wadsworth*, 6 East, 602, it was held that a crop of growing grass was such an interest in and concerning land as to bring it within the statute of frauds and to require the contract to be in writing.

In *Parker* v. *Stainland*, 10 East, 562, it was decided that

a crop of potatoes, which were in a condition to be harvest.
ed, were chattels, and would pass by parol.   BAILEY, J., in
this case remarked, that " in the cases of *Crosby* v. *Wads-
worth*, and *Waddington* v. *Bristowe*, the contracts were
made for growing crops of grass and hops, and therefore
the purchaser of the crops had an intermediate interest in
the land while the crops were growing to maturity, before
they were gathered ; but here the land was considered as a
mere warehouse for the potatoes till the defendant could re-
move them, which he was to do immediately.

In *Warwick* v. *Bruce*, 2 M. & S. 205, which was also for
a sale of potatoes, Lord ELLENBORO' remarked, " here is a
contract for the sale of potatoes at so much per acre ; the
potatoes are the subject matter of the sale, and whether at
the time of the sale they were covered with the earth in the
field, or in a box, still it was a sale of a mere chattel."

In *Whipple* v. *Foot*, 2 Johns. 418, it was decided that
wheat growing on the ground, was a chattel, and as such,
subject to be taken on execution ; and in *Newcomb & al.* v.
*Ramer*, cited in a note in 2 Johns. 421, it was held that a
crop of growing wheat would pass by parol.

In *Whitmarsh* v. *Walker*, 1 Met. 313, it was held that
an oral agreement for the sale of mulberry trees growing in
a nursery, and raised to be sold and transported, would be
valid without writing.

In *Cutler* v. *Pope*, 13 Maine, 377, it was decided that
grass already grown, and in condition to cut, may be sold by
parol ; and there is no objection to such sale, arising from
the statute of frauds.

Numerous other cases might be cited, in which the princi-
ples in the cases above have been adopted with different de-
grees of modification.   The cases in New York go the full
length of sustaining the sale of *growing* crops as chattels.
In England and in this State, the courts have not extended
the principle, in terms, so far, though cases may be found,
which by analogy, fall very little short of the rule established
in New York.

But the application of the rule which has been adopted in this State, will be decisive of this case. The oats and wheat were not only grown and in condition to be cut, but a portion of the oats had actually been harvested. The corn was subsequently all delivered with an additional quantity. The quantity was determined by estimation. There was therefore nothing in the nature or situation of the property to prevent it from passing by parol. *Cutler* v. *Pope,* 13 Maine, 377.

But if the property were within the statute of frauds the result would be the same, because the testimony of Neal would certainly authorize the inference, that the contract of sale was in writing. If it should be contended, that the paper in the case, dated Aug. 26, 1850, is the only contract of sale, the answer is still the same, that being also in writing.

Nor can there be any objection on the ground, that the sale was not fully consummated, that something further remained to be done by the vendor. The consideration was paid; the property designated and delivered. The fact, that Bryant desired a particular disposition of the property subsequent to the sale to him, and that he made an arrangement with Morrill to take charge of the property and keep it for him, can have no effect upon the sale. For that purpose he could contract with Morrill in the same manner and with the same legal effect as with any other party. And in neither case would the contract of bailment affect the prior contract of sale. So, also, as to the hay in the barn, there is no reason perceived why it did not pass by the sale.

On these points we think the instructions were erroneous, and for this reason there must be a new trial.

If the jury shall find the recitations of a sale, contained in the paper dated Aug. 26, 1850, are correct, and that the consideration for that sale was the balance due on the original contract, the result must be that that contract was thereby paid and discharged, and that this action cannot be maintained. *Exceptions sustained, verdict set aside and new trial granted.*